**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHELLE L. TILTON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 1:14-cv-02219-YK-GBC<br><br>(JUDGE KANE)<br><br>(MAGISTRATE JUDGE COHN)<br><br>REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS<br><br>Docs. 1, 4, 5, 10, 11, 12 |

**REPORT AND RECOMMENDATION**

## I. Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Michelle L. Tilton ("Plaintiff") for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.* (the "Regulations").

One of Plaintiff's treating providers opined that Plaintiff was disabled. Doc. 5. No medical opinion contradicts the treating source opinion. Doc. 5. The Third Circuit has repeatedly held that an ALJ may not reject an uncontradicted treating

source opinion with only lay reinterpretation of medical evidence. *See Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988; *Doak v. Heckler*, 790 F.2d 26, 29-30 (3d Cir. 1986); *Ferguson v. Schweiker*, 765 F.2d 31, 37, 36-37 (3d Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 58-59, (3d Cir. 1979); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978). Defendant identifies no subsequent precedential Third Circuit case addressing uncontradicted treating source opinions. (Def. Brief). Subsequent regulations codifying the treating source rule retain, rather than abrogate, this precedent. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (internal citations omitted). Consequently, *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* remain binding law. *Id*.

The ALJ may reject an uncontradicted treating source opinion with non-medical evidence. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936. Unlike medical evidence, interpreting non-medical evidence does not require specialized medical expertise.

*See* Fed. R. Evid. 702,[1] 1972 Advisory Committee Notes ("An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge…'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute'") (quoting Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952)). However, the non-medical evidence must contradict the treating source opinion. *See* Standards, 56 FR 36932-01 at 36936. Here, Plaintiff reported activities of daily living that included significant assistance from her husband and she stated she was unable to sit or stand for much of the day. Doc. 5. The ALJ improperly found that Plaintiff's ability to bear children contradicted the treating source opinion. Doc. 5. Consequently, the ALJ failed to cite any non-medical evidence that was inconsistent with the treating source opinion.

The only remaining rationale provided by the ALJ was lay reinterpretation of medical evidence. This is impermissible. *See Frankenfield*, 861 F.2d 405 at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d 3 at 37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*,

[1] Although the Federal Rules of Evidence do not apply to determinations under the Act, the rationale contained in the Advisory Committee notes is persuasive.

596 F.2d at 603; *Gober*, 574 F.2d at 777. "Despite the deference due to administrative decisions in disability benefit cases, "[Courts] retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981)).The Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings and proper evaluation of the medical opinions.

## II. Procedural Background

On December 15, 2010, Plaintiff applied for DIB. (Tr. 243). On February 9, 2011, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 189-211), and Plaintiff requested a hearing. (Tr. 212-13). On March 7, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 150-88). On May 6, 2013, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 13-35). Plaintiff requested review with the Appeals Council (Tr. 12), which the Appeals Council denied on September 22, 2014, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On November 20, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On February 3, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 4, 5). On March 20, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 10). On April 23, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 11). On May 5, 2015, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 12). On December 17, 2015, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

## III. Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV. Relevant Facts in the Record

Plaintiff was born in 1974 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 29); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a soldering machine operator, electronic assembler and tester and head cashier. (Tr. 24). The ALJ found that Plaintiff was unable to perform her past relevant work, but remained able to perform a range of sedentary work on a regular and continuing basis. (Tr. 19-29). Based on VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 29-30).

The only medical opinion in the record is from Plaintiff's treating rheumatologist, Dr. Joseph Enama, M.D. (Tr. 807-12). Dr. Enama opined that she is unable to perform sedentary work on a regular and continuing basis. (Tr. 810). Specifically, he opined that she could stand or walk for up to an hour and sit for up

to two hours out of an eight-hour workday. (Tr. 810). He also opined that she would need additional breaks during the workday and would be absent more than three times per month. (Tr. 811). He explained that he had seen Plaintiff every four-to-six months since June of 2011, she met the American Rheumatological criteria for fibromyalgia, and she experienced constant pain and fatigue. (Tr. 807-08). He incorporated his office notes by reference. (Tr. 808).

The record indicates that, in June of 2011, Dr. Enama referred Plaintiff to physical therapy. (Tr. 799). She reported pain "especially with sitting or standing." (Tr. 799). The record contains only one treatment from Dr. Enama prior to his opinion, from April of 2012. (Tr. 804). Plaintiff reported pain in her spine, left hip and left knee. (Tr. 804). Plaintiff reported that she had given birth to twins and was not taking pain medication because she was breast feeding. (Tr. 805). She was "fatigued-appearing…with a blunted affect." (Tr. 805). Examination indicated "15/18 fibromyalgia trigger points." (Tr. 805). Dr. Enama performed an injection in Plaintiff's hip and prescribed Gabapentin. (Tr. 805). Plaintiff followed-up in October of 2012, and reported "absolutely no relief" from her injection with worsening pain. (Tr. 828). She also reported increased pain in her fingers, wrists, and forearm. (Tr. 828). She had stopped Gabapentin because it aggravated her migraines. (Tr. 828). Plaintiff reported that, in the past, Cymbalta had caused side effects and Savella and Lyrica were ineffective. (Tr. 829). Dr. Enama assessed

Plaintiff to have "fibromyalgia with body wide pain symptoms." (Tr. 829). Subsequent imaging also indicated a tear in her hip. (Tr. 821-24). Plaintiff reported that she would be unable to perform physical therapy because of "her insurance situation and the fact that she has young children at home." (Tr. 829).

Evidence from other providers indicates that Plaintiff began complaining of "significant pain in the knees, ankles, and heels" in June of 2008. (Tr. 363, 624-25). Around that time, she took medical leave from her job as a cashier. (Tr. 360). She was diagnosed with fibromyalgia, costochondritis, depression and irritable bowel syndrome. (Tr. 360). In 2008, her rheumatologist opined she could perform medium work, and her primary care physician opined that she was disabled. (Tr. 700-05, 771-75). Plaintiff continued reporting pain and fatigue through 2009. (Tr. 344-401, 580-624).

In 2010, Plaintiff moved and change providers. (Tr. 533). She continued to report pain and fatigue. (Tr. 534-39, 549-52, 561-69, 573). Later that year, her primary care physician, Nancy Hapler, C.R.N.P, authored a medical opinion that states:

> I am the nurse practitioner who is the PCP for Ms. Tilton. She has been under my care since 6/15/10*;* prior to that she was under the care of a Dr. Hyder in Richmond Virginia. She carries a diagnosis of fibromyalgia, which had been diagnosed prior to her coming to my practice.1 did obtain the patient's old records, and in those records there is a correspondence dated 2/4/09 in which her previous provider stated that she was unable to return to work until after 3/15/09. On entering my practice in June of 2010 patient said she had not been

> working. At that time she told me she had seen a rheumatologist who tried some medications that did not work. I did refer her to rheumatologist (Dr. Alyward), whom she saw on 7/16/10. He notes that the diagnosis of fibromyalgia was made more than a year previous, and that she had been tried on Cymbalta and Lyrica, which were not helpful. She also was placed on Savella, which initially provided some relief, however that was discontinued because she was planning to undergo in vitro fertilization. He noted that her symptoms included many positive tender points, daily headaches including migraines, irritable bowel syndrome and temporomandibular syndrome; she also has excessive fatigue, and "fibroma fog." Patient has elected not go back to see Dr. Alyward, and we are currently pursuing referral to a rheumatologist at Hershey Medical Center.
> At this point the patient has not achieved satisfactory control of her symptoms, and in view of her difficult to treat symptoms, I anticipate that she will be unable to do any type of work for the next 12 months. However, the patient will be referred to Hershey Medical Center rheumatologist-and it is hoped that she will achieve symptom control over time, this is especially important not only for her well being and productivity but also is optimal as she continues to pursue pregnancy, childbirth and childrearing.

(Tr. 533). In 2013, primary care provider Dr. Matthew Silvis, M.D., wrote that "I think she does need to have a functional capacity evaluation to determine her disability needs. I have recommended that she have this performed. Given that this is not a workman's compensation issue this will not be performed at Hershey Medical Center." (Tr. 1119).

The non-medical evidence indicates that Plaintiff reported and testified to daily activities that were significantly limited and not performed on a regular and continuing basis. (Tr. 108-88, 306-17). The record also shows that Plaintiff underwent in vitro fertilization, gave birth to twins in January of 2012, and began

caring for them thereafter. (Tr. 804, 1130). Her husband worked from home and assisted her in caring for her children and with daily activities. (Tr. 1130).

## V. Plaintiff Allegations of Error

### A. Medical Opinions

Plaintiff asserts that the ALJ erred in rejecting treating source medical opinions with only a lay reinterpretation of medical evidence. (Pl. Brief). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Medical opinions come from treating physicians, examining physicians, and non-examining physicians. 20 C.F.R. §§ 404.1527(c)(1)-(2). The Regulations provide special deference to medical opinions from treating sources who have "seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment" ("treating source rule"). *See* 20 C.F.R. § 404.1527(c)(2).

An ALJ may not reject a treating source medical opinion with only a lay reinterpretation of medical evidence. In *Gober*, the Third Circuit explained that "[w]hile an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free

to set his own expertise against that of a physician who testified before him." *Gober*, 574 F.2d at 777. The Third Circuit has consistently reaffirmed *Gober*'s prohibition against ALJs rejecting treating source medical opinions on the basis of only lay reinterpretation of medical evidence. *See Frankenfield*, 861 F.2d at 408 (Commissioner could not reject medical opinions "simply by having the administrative law judge make a different medical judgment"); *Doak*, 790 F.2d at 29-30 ("[n]o physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence"); *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115 ("the ALJ's conclusion that appellant is capable of engaging in sedentary activity is merely a function of the ALJ's own medical judgment. As such, his conclusion may not be permitted to stand, for we have pointed out time and again that these kinds of judgments are not within the ambit of the ALJ's expertise"); *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494 ("[a]n administrative law judge may not reject professional medical evidence on the basis of his own observation"); *Rossi*, 602 F.2d at 58-59 (ALJ's opinion was "not supported by any medical opinion in this case… an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence."); *Fowler*, 596 F.2d at 603 ("[w]e have examined the record for an expert medical opinion that Mrs. Rossi was capable of

working…There is none”). The cases hold that, even under the deferential substantial evidence standard of review, lay reinterpretation of medical evidence is not “inconsistent….substantial evidence” sufficient to reject an uncontradicted treating source medical opinion. *See id.*; *see also* 20 C.F.R. § 404.1527(c)(2).

After these cases were decided, the Social Security Administration promulgated regulations addressing medical opinions for the first time. *See* Standards, 56 FR 36932-01 at 36936. Regulatory enactments retain, rather than abrogate, pre-existing common law unless the enactments are incompatible with existing common-law or there is evidence of a clear intent to abrogate. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (citing *United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993); *Sebelius v. Cloer*, ––U.S. –––, 133 S.Ct. 1886, 1896, 185 L.Ed.2d 1003 (2013); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). The party asserting that the enactment abrogates common law bears the burden of overcoming this presumption. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989).

The controlling weight provision, 20 C.F.R. §404.1527(c)(2), codifies the treating source rule and is compatible with *Frankenfield*, *Doak*, *Ferguson*, *Kent*,

*Van Horn*, *Kelly, Rossi*, *Fowler*, and *Gober* for any uncontradicted, well-supported treating source opinion. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). Specifically, 20 C.F.R. § 404.1527(c)(2) provides that, if a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the ALJ must "give it controlling weight." *Id.* The Regulations do not define other "inconsistent….substantial evidence." *Id. Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* hold that lay reinterpretation of medical evidence does not constitute "inconsistent . . . substantial evidence." *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober* provide the definition for the regulatory language "inconsistent…substantial evidence." 20 C.F.R. §404.1527(c)(2). *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* and 20 C.F.R. §404.1527(c)(2) are compatible.[2]

[2] The guidance from the SSA explicitly contemplates that non-medical evidence can provide substantial inconsistent evidence, but does not explicitly address whether lay reinterpretation of medical evidence constitutes substantial inconsistent evidence. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932–01 at 36934.

The intent to codify, rather than change, the existing law with 20 C.F.R. §404.1527(c) has been noted by Congress, the Supreme Court, and the Social Security Administration itself. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932–01 at 36934 ("[T]he majority of the circuit courts generally ... agree that treating source evidence tends to have a special intrinsic value by virtue of the treating source's relationship with the claimant ... [and] if the Secretary decides to reject such an opinion, he should provide the claimant with good reasons for doing so. We have been guided by these principles in our development of the final rule"); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823, 123 S.Ct. 1965, 1966, 155 L.Ed.2d 1034 (2003) ("The treating physician rule ... was originally developed by Courts of Appeals ... In 1991, the Commissioner of Social Security adopted regulations approving and formalizing use of the rule in the Social Security disability program")).

The Third Circuit has not addressed an uncontradicted treating source opinion since the SSA promulgated these regulations, but other Circuits have. *See Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009); *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Harbor v. Apfel*, 242 F.3d 375 (8th Cir.

2000); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995). These cases continued to hold that an ALJ may not reject an uncontradicted treating source medical opinion with only lay reinterpretation of medical evidence. *Id.* When a Court of Appeals issues a decision that the SSA determines is contradictory to the intended interpretation of a regulation, the SSA must issue an Acquiescence Ruling. 20 C.F.R. § 404.985(b)(1) ("We will release an Acquiescence Ruling for publication in the Federal Register for any precedential circuit court decision that we determine contains a holding that conflicts with our interpretation of a provision of the Social Security Act or regulations no later than 120 days from the receipt of the court's decision."). More than 120 days has passed since these decisions, and the SSA has not promulgated an Acquiescence Ruling regarding any of these decisions. *Cf. Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (Absent a Social Security Ruling, Acquiescence Ruling, or Regulation indicating the SSA's interpretation, SSA's position in this case is "nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack") (quoting *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-21667 (2012)).

Moreover, although the Third Circuit has not addressed in a precedential opinion an uncontradicted treating source medical opinion, the Third Circuit has

reaffirmed the prohibition of lay reinterpretation of medical evidence even when there is a contradictory medical opinion. In *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008) and *Morales*, the Third Circuit held that a single non-treating medical opinion was not sufficient to reject a treating source medical opinion. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317. In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit held that an ALJ properly rejected a treating source medical opinion where the ALJ relied on two consistent non-treating medical opinions, one from an expert who reviewed the complete record through the hearing date. *Id.* at 196.

Defendant frequently cites three additional cases in support of an ALJ who rejects a treating source medical opinion with only a single non-examining, non-treating medical opinion: *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011); *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999); and *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991). However, *Jones* was: (1) decided before 20 C.F.R. §404.1527 and SSR 96-6p were promulgated and (2) involved an ALJ who relied on two state agency medical opinions that corroborated each other to reject the treating source medical opinion. *See Jones*, 954 F.2d at 129 (ALJ may disregard the opinion of a treating physician if “two physicians in the state agency evaluated the medical findings...and concluded that those findings did not reveal any condition that would preclude gainful employment”).

Neither *Chandler* nor *Plummer* implicate the treating source rule. *See Chandler*, 667 F.3d at 360-63; *Plummer*, 186 F.3d at 430. In *Plummer*, the ALJ did not have to resolve a conflict against treating source opinions because the ALJ relied on three other treating source opinions that the claimant was not disabled. *Id.* In *Chandler*, there were no treating source medical opinions before the ALJ. *Id.* at 360-63. There were statements from a nurse practitioner, but a nurse practitioner is not an acceptable medical source. *Id.* Statements from individuals who are not acceptable medical sources must be considered, but they are excluded from the definition of medical opinion. *Id.*; 20 C.F.R. §404.1527(a). Consequently, they may never be entitled to controlling weight and are not entitled to the treating source rule. *See* 20 C.F.R. §404.1527(c)(2). In *Chandler*, the claimant submitted two medical opinions in support of her claim, but not until after the ALJ decision. *Chandler*, 667 F.3d at 360. The Third Circuit excluded these from consideration because Plaintiff had no good cause for not submitting them until after the ALJ decision. *Id.* (citing *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). Consequently, there was only one medical opinion before the ALJ: an uncontradicted medical opinion from a state agency physician that the claimant was not disabled. *Chandler*, 667 F.3d at 360-63.

Thus, the ALJ must follow the binding precedent in *Brownawell*, *Morales*, *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober*

hold that the lay reinterpretation of medical evidence does not constitute inconsistent substantial evidence sufficient to reject a treating source opinion. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603; *cf.* 20 C.F.R. § 404.985(a)("We will apply a holding in a United States Court of Appeals decision that we determine conflicts with our interpretation of a provision of the Social Security Act or regulations unless the Government seeks further judicial review of that decision or we relitigate the issue presented in the decision").

The guidance indicates that an ALJ may use medical evidence to determine whether the decision is well-supported. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936. However, "well-supported" is a low threshold. *Id.* The Administration "changed the term 'fully supported' to 'well-supported' because" the Administration:

> [A]greed with commenters who pointed out that 'fully supported' was unclear and that, more important, it was an impractically high standard which, even if it were attainable, would essentially make any opinion superfluous. We believe that the new term, 'well-supported,' is more practicable and more reasonable; it should make clear that we will adopt opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques unless they are inconsistent with substantial evidence in the record.

*Id*. Additionally, the SSA explained:

> Some commenters were concerned that the proposed language of §§ 404.1527(b) and (c), and 416.927(b) and (c) permitted us to discount a treating source's apparently unsupported opinion without recontacting the source, and that the rules placed highly restrictive conditions on obtaining additional information from treating sources.
>
> Response: To the contrary, recontact with treating sources to complete the case record and to resolve any inconsistencies in the evidence is one of the principal provisions of this set of rules. See §§ 404.1512(d) and 416.912(d) of these final regulations. Far from being restrictive, the intent of these rules is to require such contacts.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01, 36951-36952. Before an ALJ may reject a treating source opinion for an alleged lack of support, the ALJ must make reasonable attempts to recontact the treating source. *See* SSR 96-5p; *Ferari v. Astrue*, No. CIV.A. 1:07-CV-01287, 2008 WL 2682507, at *6 (M.D. Pa. July 1, 2008) ("SSR 96-5p emphasizes to the adjudicator the importance of making 'every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.' That is not what the adjudicator did here."). Thus, the ALJ may not merely reinterpret the medical evidence to find that an opinion lacks support without attempting to recontact the treating source. *Id.* Here, there is no evidence in the record that the ALJ attempted to recontact the treating source. Doc 5. Consequently, the ALJ was not entitled to reject the opinion for an alleged lack of support. *See* SSR 96-5p; *Ferari v. Astrue*, No. CIV.A. 1:07-CV-01287, 2008 WL 2682507, at *6 (M.D. Pa. July 1, 2008).

Rejecting an opinion based on a fibromyalgia diagnosis for a lack of objective support is particularly inappropriate. *See Watkins v. Colvin*, 3:11-CV-1635, 2013 WL 1909550 (M.D. Pa. May 8, 2013) (internal citations omitted); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia's "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective"); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (noting that "a growing number of courts ... have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease") (internal quotation marks and citations omitted); *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) ("'Because proving the disease is difficult ..., fibromyalgia presents a conundrum for insurers and courts evaluating disability claims.' "); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n. 3 (6th Cir. 2007). The ALJ lacked substantial evidence to find that Dr. Enama's opinion was not well-supported.

The guidance from the Social Security Administration provides that non-medical evidence can be inconsistent evidence substantial enough to reject a treating source opinion, but the SSA "would expect it to be an extremely rare

occurrence….For example, an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936.; *see Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with other evidence of record including Claimant's own testimony"); *Kays v. Colvin*, No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014) ("limitations in lifting or carrying imposed by [the physician] were inconsistent with [claimant's] own testimony"); *Marr v. Colvin*, No. 1:13-cv-2499 (M.D.P.A. April 15, 2015) (ALJ properly rejected treating source medical opinion that claimant could not sit for more than two hours out of an eight-hour workday when she regularly sat for almost six hours at a time); *cf. Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) ("the ALJ's decision fails to explain how Chunn's activities and behaviors are inconsistent with Dr. Ziolkow's characterization of her mental capacity.").

Here, the non-medical evidence was not inconsistent with Dr. Enama's opinion. The non-medical evidence indicates that Plaintiff reported and testified to daily activities that were significantly limited and not performed on a regular and

continuing basis. (Tr. 108-88, 306-17). The record also shows that Plaintiff underwent in vitro fertilization, gave birth to twins in January of 2012, and began caring for them thereafter. (Tr. 804, 1130). Her husband worked from home and assisted her in caring for her children and with daily activities. (Tr. 1130).

Defendant repeatedly emphasizes that Plaintiff chose to become pregnant and breastfeed. (Def. Brief). Defendant cites no case holding that a claimant's pregnancy can be used to discount a treating source opinion entitled to special deference. (Def. Brief). The Court notes that pregnancy can indicate that a claimant is less than fully credible, like if the claimant "stopped working because of a pregnancy, not because of any such impairments." *Sargent v. Astrue*, No. CIV.A. 11-186, 2011 WL 3844192, at *14 (W.D. Pa. Aug. 30, 2011) *aff'd sub nom. Sargent v. Comm'r of Soc. Sec.*, 476 F. App'x 977 (3d Cir. 2012); SSR 96-7p. Here, however, Plaintiff stopped working in June of 2008, after going on medical leave after her fibromyalgia symptoms started. (Tr. 360, 363, 624-25). Plaintiff's ability to become pregnant, bear children, and breast feed does not constitute activities of daily living that rise to the level of substantial gainful activity. "[D]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir.1990) (*quoting Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981)). The undersigned

agrees with other Courts that the mere fact that a claimant is able to become pregnant and bear children does not contradict disability:

> Plaintiff contends that it is completely irrelevant that Plaintiff had a successful pregnancy in 2009. (ECF No. 12, p. 23). As such, Plaintiff argues that the ALJ's assessment was distasteful and wholly inappropriate. *Id.* I agree with Plaintiff that the ability to become pregnant and successfully complete a pregnancy has no bearing in this case on whether Plaintiff had a disability. Just because a woman is pregnant does not mean that she is not suffering from an impairment or she does not have limitations (mental, physical or both). Consequently, her ability, as a woman, to become pregnant is irrelevant and should have no negative impact on Plaintiff's credibility. Therefore, on remand, the ALJ should reconsider Plaintiff's credibility without considering the same.

*Danlovich v. Colvin*, No. 15-196, 2016 WL 491723, at *3 (W.D. Pa. Feb. 9, 2016) (footnote omitted); *see also Ritzer v. Colvin*, No. CIV.A. 13-1036, 2014 WL 1785346, at *5 (W.D. Pa. May 5, 2014); *cf. Gorr-Brasile v. Comm'r of Soc. Sec.*, No. CIV.A. 08-737, 2009 WL 650738, at *9 (W.D. Pa. Mar. 12, 2009) ("Dr. Tarter noted that Plaintiff was not being prescribed any psychotropic medication in June 2005. (R. 186). Dr. Tarter fails to acknowledge, however, that Plaintiff was not taking any medication for her mental impairments at that time because she was pregnant.").

The only remaining rationale provided by the ALJ was impermissible lay reinterpretation of medical evidence. The ALJ failed to provide substantial inconsistent evidence to reject Dr. Enama's opinion. Thus, the ALJ failed to provide substantial evidence to deny benefits. *See* 20 C.F.R. §404.1527(c)(2);

*Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603.

Since 2011, Courts in this District have declined to rely on dicta in *Chandler*, *Jones*, *Brown*, or *Plummer* and granted claimants' appeals in dozens of cases when an ALJ rejects a treating source medical opinion with only lay reinterpretation of medical evidence.[3] In cases before the undersigned alone, the

---

[3]*See, e.g.*, *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *16 (M.D. Pa. May 11, 2015); *Weinus v. Colvin*, No. 1:14-CV-00438, 2015 WL 461850, at *9 (M.D. Pa. Feb. 4, 2015); *Miller v. Colvin*, No. 3:13-CV-02348, 2014 WL 4457232, at *9 (M.D. Pa. Sept. 10, 2014); *Bloomer v. Colvin*, 3:13–CV–00862, 2014 WL 4105272, at *5 (M.D.Pa. Aug.19, 2014) (Jones, J.); *House v. Colvin*, 3:12–CV–02358, 2014 WL 3866072, at *8 (M.D.Pa. Aug.6, 2014) (Kane, J.); *Muhaw v. Colvin*, CIV.A. 3:12–2214, 2014 WL 3743345, at *15 (M.D.Pa. July 30, 2014) (Mannion, J.); *Zerbe v. Colvin*, No. 3:12-CV-01831, 2014 WL 2892389, at *9 (M.D. Pa. June 26, 2014); *Maellaro v. Colvin*, 3:12–CV–01560, 2014 WL 2770717, at *11 (M.D.Pa. June 18, 2014) (Mariani, J.); *Russell-Harvey v. Colvin*, No. 3:12-CV-00953, 2014 WL 2459681, at *13 (M.D. Pa. May 29, 2014); *Vergnetti v. Colvin*, No. 3:13-CV-02332, 2014 WL 1515850, at *7 (M.D. Pa. Apr. 18, 2014); *Arnold v. Colvin*, 3:12–CV–02417, 2014 WL 940205, at *4 (M.D.Pa. Mar.11, 2014) (Brann, J.); *Keller v. Colvin*, No. 3:12-CV-01502, 2014 WL 658064, at *13 (M.D. Pa. Feb. 20, 2014); *Gormont v. Astrue*, 3:11–CV–02145, 2013 WL 791455, at *7 (M.D.Pa. Mar.4, 2013) (Nealon, J.); *Ames v. Astrue*, No. 3:11-CV-1775, 2013 WL 435451, at *19 (M.D. Pa. Feb. 4, 2013); *Ennis v. Astrue*, No. 4:11-CV-01788, 2013 WL 74375, at *8 (M.D. Pa. Jan. 4, 2013); *Kaumans v. Astrue*, 3:11–CV–01404, 2012 WL 5864436, at *12 (M.D.Pa. Nov.19, 2012) (Caputo, J.); *Troshak v. Astrue*, 4:11–CV–00872, 2012 WL 4472024, at *7–8 (M.D.Pa. Sept.26, 2012) (Munley, J.); *Shannon v. Astrue*, No. 4:11-CV-00289, 2012 WL 1205816, at *14 (M.D. Pa. Apr. 11, 2012); *Shedden v. Astrue*, 4:10–CV–2515, 2012 WL 760632, at *11 (M.D.Pa. Mar.7, 2012) (Rambo, J.); *Gunder v. Astrue*, Civil No. 11–300, slip op. at 44–46(M.D.Pa. February 15, 2012) (Conaboy, J.); *Dutton v. Astrue*, Civil No. 10–2594, slip op. at 37–39(M.D.Pa. January 31,

Court has granted claimants' appeal in at least thirty-three cases in just the last eighteen months when an ALJ rejects a treating source medical opinion with only lay reinterpretation of medical evidence.[4] The Court recommends remanding the

---

2012) (Munley, J.) (Doc. 14); *Yanchick v. Astrue*, Civil No. 10–1654, slip op. at 17–19 (M.D. Pa. April 27, 2011) (Muir, J.) (Doc. 11); *Coyne v. Astrue*, Civil No. 10–1203, slip op. at 8–9 (M.D. Pa. June 7, 2011) (Muir, J.) (Doc. 21); *Crayton v. Astrue*, Civil No. 10–1265, slip op. at 38–39 (M.D.Pa. September 27, 2011) (Caputo, J.) (Doc, 17).

[4] *See Brown v. Colvin*, No. CV 3:14-0100, 2015 WL 7428579, at *3 (M.D. Pa. Nov. 23, 2015); *Costanzi v. Colvin*, No. 1:14-CV-752, 2015 WL 6786726, at *1 (M.D. Pa. Nov. 6, 2015); *Cobourn v. Colvin*, No. 1:14-CV-01292-GBC, 2015 WL 5785733, at *1 (M.D. Pa. Sept. 30, 2015; *Voorhees v. Colvin*, No. 3:13-CV-02583-GBC, 2015 WL 5785830, at *25 (M.D. Pa. Sept. 30, 2015; *Davenport v. Colvin*, No. 3:14-cv-1295 (M.D. Pa. Sept. 25, 2015); *Thanh Tam Vo v. Colvin*, No. 1:14-CV-00541-GBC, 2015 WL 5514981, at *4 (M.D. Pa. Sept. 15, 2015); *Ciccia v. Colvin*, No. 1:14-CV-1552, 2015 WL 5093357, at *1 (M.D. Pa. Aug. 28, 2015); *Wilson v. Colvin*, No. 3:13-cv-2145 (M.D. Pa. Aug. 2015); *Paisley v. Colvin*, No. 1:14-CV-1656, 2015 WL 5012463, at *1 (M.D. Pa. Aug. 20, 2015); *Moncak v. Colvin*, No. 1:14-CV-1378-GBC, 2015 WL 4647610, at *1 (M.D. Pa. Aug. 5, 2015); *Ames v. Colvin*, No. 3:13-cv-2480-RDM (M.D. Pa. July 14, 2015); *Kipp v. Colvin*, No. 1:13-cv-2552-MWB (M.D. Pa. May 13, 2015); *Kester v. Colvin*, No. 3:13-CV-02331, 2015 WL 1932157, at *2 (M.D. Pa. Apr. 21, 2015); *Jimenez v. Colvin*, No. 3:13-CV-2861 (M.D. Pa. April 14, 2015); *Miller v. Colvin*, No. 3:13-CV-02594-GBC, 2015 WL 1609671, at *6 (M.D. Pa. Apr. 10, 2015); *Dennis v. Colvin*, No. 3:13-CV-2537, 2015 WL 1608714, at *1 (M.D. Pa. Apr. 10, 2015); *Speese v. Colvin*, No. 1:13-2805-JEJ at *1 (M.D. Pa. April 10, 2015); *Richardson v. Colvin*, No. 1:13-CV-02944-GBC, 2015 WL 1608665, at *7 (M.D. Pa. Apr. 10, 2015; *Protzman v. Colvin*, No. 3:13-CV-2558, 2015 WL 1605765, at *2 (M.D. Pa. Apr. 9, 2015); *Williams v. Colvin*, No. 1:14-CV-00557-GBC, 2015 WL 1499804, at *6 (M.D. Pa. Mar. 31, 2015); *Eckrote v. Colvin*, No. 3:13-CV-02403-GBC, 2015 WL 1471507, at *8 (M.D. Pa. Mar. 31, 2015); *Cliff v. Colvin*, No. 1:13-CV-02985-GBC, 2015 WL 1499769, at *4 (M.D. Pa. Mar. 31, 2015); *Lynch v. Colvin*, No. 3:13-cv-2654 (M.D. Pa. March 26, 2015); *McKean v. Colvin*, No. 1:13-CV-2585, 2015 WL 1201388, at *8 (M.D. Pa. Mar. 16, 2015); *Duvall-Duncan v. Colvin*, No. 1:14-CV-17, 2015 WL 1201397, at *11 (M.D. Pa. Mar. 16, 2015; *Hawk v. Colvin*, No. 1:14-CV-337, 2015 WL 1198087, at *2 (M.D. Pa. Mar. 16, 2015); *Thompson*

case for further evaluation of Dr. Enama's opinion pursuant to 20 C.F.R. §404.1527(c) and *Brownawell, Morales, Frankenfield, Doak, Ferguson, Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober*. *See* 20 C.F.R. §404.1527(c)(2). *Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603.

**B. Other Allegations of Error**

Because the Court recommends remand on these grounds, it declines to address Plaintiff's other allegations. A remand may produce different results on these claims, making discussion of them moot. *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

**C. Remedy**

Remand, rather than reversal and award of benefits, is the appropriate remedy in this case. The ALJ should be afforded the opportunity to develop either

---

*v. Colvin*, No. 3:13-CV-02605, 2015 WL 915484, at *15 (M.D. Pa. Mar. 3, 2015); *Sherman v. Colvin*, No. 3:14-cv-00386-RDM (M.D. Pa. Feb. 23, 2015; *Gonzales v. Colvin*, No. 3:13–cv–02620, (M.D.Pa. Feb. 17, 2015); *Wilson v. Colvin*, No. 3:13-CV-709, 2015 WL 140036, at *1 (M.D. Pa. Jan. 12, 2015); *Mazella v. Colvin*, No. 3:12-cv-1777-RDM (M.D. Pa. Dec. 8, 2014); *Hendrickson v. Colvin*, 2014 U.S. Dist. LEXIS 171610, 25-26 (M.D. Pa. Nov. 21, 2014); *Kovach v. Colvin*, No. 1:13-CV-01626-GBC, 2014 WL 4796367, at *15 (M.D. Pa. Sept. 26, 2014); *Gray v. Colvin*, No. 3:13-CV-01944-GBC, 2014 WL 4536552, at *1 (M.D. Pa. Sept. 11, 2014); *Campanaro v. Colvin*, No. 3:12-CV-1527, 2014 WL 4272728, at *24 (M.D. Pa. Aug. 28, 2014).

non-medical evidence or medical opinion evidence to support the denial of benefits. *See Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotations omitted)).

## VI. Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1. The decision of the Commissioner of Social Security denying Plaintiff's benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2. The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A

Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: March 31, 2016

s/Gerald B. Cohn
GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE